UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN NATURE,<br><br>    Appellant,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Appellee. | No. 1:16-cr-00133-DAD-1<br><br>ORDER DENYING APPEAL OF MAGISTRATE JUDGE DECISION |

    Pending before the court is a criminal appeal of a misdemeanor conviction following an August 11, 2016 bench trial. On August 23, 2016, defendant-appellant Adrian Nature (hereinafter "Nature") filed his notice of appeal indicating he was appealing both the conviction and sentence as well as the assigned magistrate judge's order denying his motion to dismiss. (Doc. Nos. 19.) Appellant's brief was filed on November 23, 2016. (Doc. No. 25.) Appellee's brief was filed on December 14, 2016. (Doc. No. 26.) Appellant replied on December 21, 2016. (Doc. No. 27.) Oral argument was heard on March 13, 2017, with Assistant Federal Defender Erin Snider appearing on behalf of Nature and Assistant United States Attorney Michael Tierney appearing on behalf of the United States. For the reasons set forth below, the court will deny the appeal and affirm the judgment as well as the order of the magistrate judge.

/////

/////

1

**BACKGROUND**

The essential facts of the case are uncontested, and are recounted here only briefly. On September 3, 2015, park rangers responded to the El Portal Community Center parking lot located in the El Portal Administrative Site (hereafter the "administrative site"), following a report that a man under the influence of alcohol was attempting to get into a vehicle and drive back to Camp Four in Yosemite Valley. Nature was arrested following a ranger's observation of several indicators of his intoxication.[1]

On November 13, 2015, the government filed a complaint against Nature, alleging therein that he violated 36 C.F.R. § 2.35(c) by being present in a park area when under the influence of alcohol to a degree sufficient to endanger himself or another person or damage property or park resources. (Doc. No. 2.) On February 9, 2016, counsel on behalf of Nature filed a motion to dismiss the criminal complaint, arguing that Nature was not in a park area at the time in question and therefore was not covered by the regulation he was charged with violating. (Doc. No. 6.) On March 21, 2016, the government filed a superseding criminal complaint alleging that Nature violated 36 C.F.R. § 34.5(b)(21), which incorporates by reference § 2.35(c) and makes it applicable to the El Portal Administrative Site. (Doc. No. 11.) The assigned magistrate judge held a hearing on Nature's motion to dismiss on March 22, 2016, and denied the motion in an order dated May 25, 2016. (Doc. No. 14.) Following a bench trial, Nature was convicted of the charged offense and was sentenced on August 15, 2016 to: twelve months of unsupervised probation; thirty-five hours of community service; $350 in penalties and fines; and one day of custody with credit for time served. (Doc. No. 18.) As noted above, Nature timely filed a notice of appeal on August 23, 2016. *See* Fed. R. Crim. P. 58(g)(2).

This court has jurisdiction over this appeal under 18 U.S.C. §§ 3231 and 3402. The magistrate judge's denial of Nature's motion to dismiss was based on a determination of a question of law and that decision is reviewed *de novo*. Fed. R. Crim. P. 58(g)(2)(D) ("The scope of appeal is the same as in an appeal to the court of appeals from a judgment entered by a district

---

[1] Nature does not contest the fact of his intoxication on appeal.

judge."); *United States v. Shryock*, 342 F.3d 948, 985 (9th Cir. 2003) (question of law reviewed *de novo*); *United States v. Keys*, 103 F.3d 758, 761 (9th Cir. 1996) (same); *see also United States v. McDermott,* 589 Fed. App'x 394, 395 (9th Cir. 2015) (on appeal from a misdemeanor conviction following a trial, the district court "reviews *de novo* a magistrate judge's legal conclusions")[2]; *United States v. Godfrey*, 112 F. Supp. 3d 1097, 1100–01 (E.D. Cal. 2015); *United States v. Mancia*, 720 F. Supp. 2d 1173, 1178 (E.D. Cal. 2010).

## ANALYSIS

Nature advances two primary arguments on appeal. First, he asserts the applicable federal regulations by their very terms do not include the administrative site within their ambit. (Doc. No. 25 at 5–9.) Second, according to Nature, the Secretary of the Interior lacked the authority to promulgate 36 C.F.R. § 34.5(b)(21) and, therefore, even if the administrative site falls within the definitions set out in the regulations, that regulation is itself invalid. (*Id.* at 9–10.) For the reasons explained below, the court is not persuaded by either argument.

1. *The Administrative Site Falls within the Regulatory Definition*

Part 34 of Chapter I of Title 36 of the Code of Federal Regulations sets out provisions for the administration of the El Portal Administrative Site. *See* 36 C.F.R. § 34.1 *et seq.* These regulations specifically incorporate by reference numerous other National Park Service ("NPS") regulations. 36 C.F.R. § 34.5. In particular, § 34.5 states:

> The following sections and paragraphs of this chapter, as amended from time to time, apply to the [El Portal Administrative Site] and are hereby incorporated and made a part of this part except as modified by the regulations in this part:
>
> . . .
>
> (b) Resource Protection, Public Use and Recreation.
>
> . . .
>
> (21) 2.35 Alcoholic beverages and controlled substances.

§ 34.5(b)(21). The regulation incorporated by reference reads, in pertinent part, as follows:

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

3

"Presence in a *park area* when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited." 36 C.F.R. § 2.35(c) (emphasis added).

The operative term in dispute in this appeal—park area—is defined by the regulations as synonymous with the term "National Park System":

> National Park System (Park area) means any area of land and water now or hereafter administered by the Secretary of the Interior through the National Park Service for park, monument, historic, parkway, recreational, or other purposes.

36 C.F.R. § 1.4. Nature argues that the El Portal Administrative Site does not fit within the definition the regulations set out for the term "park area," i.e., it is not an "area of land . . . administered by the Secretary of the Interior through the National Park Service for park, monument, historic, parkway, recreational or other purposes." 36 C.F.R. §§ 1.4, 2.35(c), 34.5(b)(21).

Nature does not dispute that the El Portal Administrative Site is an "area of land . . . administered by the Secretary of the Interior through the National Park Service." (*See* Doc. No. 25 at 7) ("Pursuant to 16 U.S.C. § 47-1, the El Portal Administrative Site is administered by the Secretary of the Interior through the National Park Service."). Rather, he disputes whether the site is administered for "park, monument, historic, parkway, recreational or other purposes." 36 C.F.R. § 1.4. Nature argues that the administrative site does not fall within the regulation's enumerated purposes because, under certain principles of statutory construction, none of these phrases may be read to incorporate land physically outside the boundaries of a national park yet utilized in running the park.[3] (Doc. No. 25 at 7–9.) Nature contends that two principles of

---

[3] Appellant includes within this argument threads of two other related arguments: (1) that the Secretary of the Interior does not consider the site to be a "park area"; and (2) that Congress did not intend for this administrative site to be included within the phrase "park area." (Doc. No. 25 at 5–9.) The first argument was discussed at some length at the oral argument in this case, and is relevant to the primary argument advanced on appeal. Nature points to a list the NPS publishes online which represents various units and related areas administered by the NPS as evidence that the agency itself does not view the administrative site as a "park area." *See* Units & Related Areas in the National Park System, www.nps.gov/aboutus/upload/Site-Designations-01-13-17.pdf (last updated Jan. 13, 2017). The El Portal Administrative Site does not appear on that list. The

4

statutory construction dictate this conclusion. In this regard, he relies upon the presumption against redundancy and *noscitur a sociis*, the principle of interpreting ambiguous terms in conjunction with other similar words to avoid ascribing to any particular word a meaning so broad it is inconsistent with the purpose of the statute. (Doc. No. 25 at 7–8.) Specifically, Nature asserts that in denying his motion to dismiss the charge the magistrate judge violated these principles and erred by concluding that the site is administered for either "park purposes" or "other purposes." (*Id.*)

Canons of statutory construction are regularly applied to administrative regulations. *See Texaco Inc. v. United States*, 528 F.3d 703, 710 (9th Cir. 2008) ("Determining a regulation's meaning requires application of the same principles that imbue exercises in statutory construction."); *Craft v. National Park Serv.*, 34 F.3d 918, 922–23 (9th Cir. 1994); *Sierra Pac. Indus. v. Lyng*, 866 F.2d 1099, 1110 (9th Cir. 1989). The first of the canons argued by appellant "holds that terms of the same statute are not to be construed so as to be redundant." *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996). This canon assumes an enacting body is aware of each term of the statute and therefore would not knowingly use any given term to mean different things within the same statute. *Id.*

---

fact that the "Frequently Asked Questions" page of the NPS's website refers to this as "the complete list of National Park Service units and affiliated areas," does not influence the court's understanding of the term "park area" as defined by the applicable regulations. In order for an agency's statements or comments to be given deference by the courts, it must not only have the authority to speak with the force of law on the issue in question, but must actually do so. *See United States v. Mead Corp.*, 533 U.S. 218, 231–38 (2001) (tariff classifications not given *Chevron* deference because they were not done through formal notice-and-comment rulemaking or adjudication). It is true agency actions not deserving of *Chevron* deference may still receive a lower form of deference premised on their "power to persuade, if lacking power to control." *See Mead*, 533 U.S. at 228–29 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Nevertheless, nothing about this list from the NPS website indicates it was intended to affect the regulatory definition of the term "park area." Rather, the list appears to be a general guide for the public. It is no surprise the administrative site—which was designated to house "utilities, facilities, and services required in the operation and administration of Yosemite National Park", 16 U.S.C. § 47-1(a), and is presumably of no general public interest—is not on that list. In any event, the court is not persuaded that there is any significance in its exclusion from the list. The second argument, regarding Congressional intent, is simply another version of the second question presented on appeal: whether the congressional authorization for the El Portal Administrative Site permits it to be subjected to these regulations. The scope of the authorizing statute is addressed below.

Here, Nature observes the magistrate judge construed the term "park purpose" to mean "not just land used as a park but also land set aside to aid in the operation and administration of a park." (Doc. No. 25 at 8). Nature argues that, if that were the case, the entire second half of the operative phrase—i.e., "for park, monument, historic, parkway, recreational, or other purposes"—would be superfluous because it would have no limiting effect. (*Id.*) The court disagrees. For instance, there is no reason to believe this regulation includes within its definition areas administered by the NPS for employee housing and transportation purposes. *See* 54 U.S.C. § 101332 (permitting the NPS to "make available" off-site employee housing and rent it to employees); *id.* § 101511 (permitting NPS to provide for maintenance and construction of certain roads outside of the park system). Including the El Portal Administrative Site within the regulatory definition of "park area" does not inherently render the terms "for park, monument, historic, parkway, recreational, or other purposes" redundant.

The second principle of statutory construction relied upon by Nature also does not invalidate this reading of the regulation. The principle of *noscitur a sociis* (literally, "it is known by its associates") "counsels lawyers reading statutes that 'a word may be known by the company it keeps.'" *Graham Cty. Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 287 (2010) (quoting *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923)). Application of this canon is intended to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth" to the statute or regulation being interpreted. *Yates v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1074, 1085 (2015) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). The similar principle of *ejusdem generis* holds that "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 135 S.Ct. at 1086.

The regulatory language at issue here defines "park area" as "any area of land . . . administered by the Secretary of the Interior through the National Park Service for park, monument, historic, parkway, recreational, or other purposes." 36 C.F.R. § 1.4. Certainly, in interpreting the phrase "other purposes," the court cannot construe it to literally mean *any* other

6

purpose, but rather must constrain the purpose to one reasonably related to a park, monument, historic, parkway, or recreational purpose. Nature argues that the language "park area" should not be construed to encompass administrative uses because:

> The five specific purposes listed in the regulation—park, monument, historic, parkway, and recreational—all share one common feature: they are the lands the Secretary of the Interior has been tasked to protect as part of the National Park System's overriding mission—that is, "to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."

(Doc. No. 25 at 9.)

However, this argument does not compel the court, as a matter of regulatory interpretation, to adopt Nature's more limited definition of the phrase "park area." Nature provides no reason for the court to conclude that the agency itself—which wrote and adopted the definition—meant to exclude the administrative site from the definition of "park area." Indeed, the fact that the Superintendent of Yosemite National Park under the delegation of the Secretary of the Interior, promulgated and adopted these regulations concerning the administrative site supports, rather than defeats, the notion that the administrative site was meant to be included within the definition of "park area."

In short, neither of the statutory construction arguments advanced by Nature of appeal persuades this court that the agency intended to exclude the El Portal Administrative Site from being subject to 36 C.F.R. § 34.5(b)(21).

2. *The Regulation Does Not Exceed the Secretary's Statutory Authority*

Nature's second argument is that the Secretary of the Interior lacked the statutory authority to promulgate 36 C.F.R. § 34.5. (Doc. No. 25 at 9–10.) For the reasons set forth below, the court rejects this argument.

It is well-established that an agency must act within the bounds established by Congress. *See, e.g.*, *City of Arlington v. Federal Commc'ns Comm'n*, ___ U.S. ___, ___, 133 S. Ct. 1863, 1869 (2013) (noting that the "power [of agencies] to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond

their jurisdiction, what they do is *ultra vires*"); *Pacific Gas and Elec. Co. v. United States*, 664 F.2d 1133, 1136 (9th Cir. 1981) (holding an agency's regulations "must be consistent with the statute under which they are promulgated"). The regulations found at 36 C.F.R. § 34.5 were promulgated in August 1986, and cite as authority for their promulgation 16 U.S.C. §§ 1, 3, 47-1, 460*l*-6a(e). *See* El Portal Administrative Site Regulations, 51 Fed. Reg. 29101-02 (Aug. 14, 1986) (to be codified at 36 C.F.R. § 34.1 *et seq.*). While a number of authorizing statutes are cited, most generally pertain to the Secretary of the Interior's authority to promulgate regulations pertinent to the National Park System. *See* 54 U.S.C. §§ 100101, 100751[4]. The crucial authorizing statute with respect to the El Portal Administrative Site states, in pertinent part:

> (a) Establishment of site
>
> To enable the Secretary of the Interior to preserve the extraordinary natural qualities of Yosemite National Park, notwithstanding its increasing use by the public, *the Secretary is hereby authorized to provide in the manner hereinafter set forth an administrative site in the El Portal area adjacent to Yosemite National Park, in order that utilities, facilities, and services required in the operation and administration of Yosemite National Park may be located on such site outside the park.*
>
> . . .
>
> (e) Status of acquired land
>
> Until further action by the Congress, the lands acquired by or transferred to the Secretary of the Interior hereunder *shall not become a part of Yosemite National Park, nor be subject to the laws and regulations governing said park,* but the Secretary of the Interior shall have supervision, management, and control of the area and *shall make and publish such rules and regulations as he may deem necessary and proper for its use and management*.

16 U.S.C. § 47-1 (emphasis added).

      This statute makes several things clear. First, the administrative site is not part of Yosemite National Park and is not subject to "the laws and regulations governing said park." 16 U.S.C. § 47-1(e). Second, the Secretary of the Interior "shall make and publish such rules and regulations as he may deem necessary and proper for [the site's] use and management." *Id.* § 47-

---
[4] These statutes were previously codified at 16 U.S.C. § 1 and 16 U.S.C. § 3, respectively.

8

1 (e). Third, the site is to be used so that the "utilities, facilities, and services required in the operation and administration of Yosemite National Park may be located on such site outside the park." *Id.* § 47-1(a).

Therefore, by its explicit terms, the administrative site is not subject to 36 C.F.R. § 2.35(c). However, Nature was not convicted of violating § 2.35(c); rather, he was convicted of violating 36 C.F.R. § 34.5(b)(21) which incorporates § 2.35 by reference. Nature's counsel conceded at oral argument that 16 U.S.C. § 47-1 does not prohibit the NPS from adopting the same substance of the regulations applicable to the National Parks in regulating the administrative site. Therefore, Nature's only objection appears to be to the manner in which those regulations were adopted, i.e., the fact that they were incorporated by reference. The court does not find this argument compelling. The statute does not specifically bar the Secretary of the Interior from incorporating other regulations by reference for use in connection with the administrative site. Nor does the language of the statute indicate the administrative site may not be subject to the same *types* of laws or regulations to which National Parks are subject. Rather, the statute simply states that the administrative site "shall not . . . be subject to the laws and regulations" governing Yosemite National Park. 16 U.S.C. § 47-1(e). Since it is not subject to those laws and regulations, the Secretary of the Interior appropriately promulgated regulations incorporating by reference some, but not all, of the regulations pertaining to National Parks so that they applied to the administrative site. Indeed, regulators frequently incorporate other definitions by reference. *See, e.g.*, 30 C.F.R. § 585.115 (regulation of the Bureau of Ocean Energy Management incorporating other documents by reference); 45 C.F.R. §§ 170.205, 170.299 (Department of Health and Human Services incorporating other regulations by reference); 47 C.F.R. §§ 15.38, 15.123 (Federal Communications Commission regulation using incorporating by reference). There simply is no reason why the NPS may not do so here.

The only other limitation on the Secretary's promulgation of regulations for the administrative site is that those regulations must be "necessary" and "proper" for the administrative site's "use and management." 16 U.S.C. § 47-1. Nature argues that because the Congressional act granted only proprietary jurisdiction, not legislative jurisdiction, over the

9

administrative site, the incorporation of § 2.35 by the promulgated regulations is not "necessary." (Doc. No. 27 at 5.) According to Nature, this is because § 2.35 purportedly duplicates state law, specifically California Penal Code § 647(f),[5] which can already be enforced within the administrative site because the United States did not acquire exclusive jurisdiction[6] to that area. (*Id.*) Because a similar provision of state law can already be enforced within the administrative site, appellant argues § 2.35 is unnecessary and therefore, improperly promulgated. The court disagrees.

The Supreme Court has long held federal courts should defer to administrative agencies' interpretations of the statutes they are charged with administering. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (noting that where "the court determines Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute"); *see also United States v. Mead Corp.*, 533 U.S. 218, 227–29 (2001); *United States v. Mazza-Alaluf*, 607 F. Supp. 2d 484, (S.D. N.Y. 2009) (determining that in a criminal prosecution for conducting unlicensed money-transmitting business, "*Chevron* deference is warranted for Treasury regulations passed under the authority delegated to it by Congress"). "We have recognized a very good indicator of delegation meriting *Chevron* treatment in express

---

[5] That California statute states that an individual commits a misdemeanor if

> found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way.

Cal. Penal Code § 647(f).

[6] The federal government can "acquire exclusive or partial jurisdiction over lands within a State by the State's consent or cession," but "[a]bsent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory," though Congress may still enact legislation with respect to those lands under the Property Clause. *Kleppe v. New Mexico*, 426 U.S. 529, 542–43 (1976).

10

congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Mead*, 533 at 229. "It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." *Id.* at 230. When the disputed action concerns the fruits of notice-and-comment rulemaking or formal adjudications, *Chevron* deference applies. *Id.* at 230–31. When such deference applies, so long as an agency's interpretation of a statutory provision it is designated to administer is a "permissible construction," federal courts must allow it to stand. *Chevron*, 467 U.S. at 865–66. The question is "whether it is a reasonable choice within a gap left open by Congress" to agency interpretation. *Id.*

Here, the Secretary of the Interior engaged in formal notice-and-comment rulemaking in order to promulgate the regulation that is contested here. *See* 51 Fed. Reg. 29101-02. In enacting the applicable statute Congress specifically authorized the Secretary to make such regulations as are "necessary and proper for [the administrative site's] use and management," but did not define the term "necessary," 16 U.S.C. § 47-1, leaving that to agency interpretation.

Furthermore, the Secretary limited the adoption of regulations governing the National Park to the administrative site to those regulations reflective of the particular needs of the site. In this regard, the site was intended to "serve as a combined residential area, administrative site and visitor information area." El Portal Admin. Site Regs., 51 Fed. Reg. 29101-02, 29102 (Aug. 14, 1986) (to be codified at 36 C.F.R. § 34.1 *et seq.*). The Secretary noted:

> Visitor protection rules, keeping of the peace, orderly management, special events, property security, controlled substances, and boating also follow the rules in effect within other National Park Service areas or adopt the same. The El Portal Administrative Site is not part of the park so the level of restriction is generally lower than would apply within Yosemite National Park.

*Id.* The applicable regulations were promulgated, according to the rulemaking, because the legislation "provided that the administrative site would not be subject to the laws and regulations governing the park," but that the Secretary should "make and publish such rules and regulations

11

as he/she may deem necessary and proper for its use and management." *Id.*

Because the authorizing statute specifically provided for the Secretary to make such regulations, *Chevron* deference applies, and the court may only invalidate the Secretary's decision that these regulations were necessary and proper if that decision was not a reasonable choice for the agency to make within the context of the statute. Nature has in no way shown that incorporating a provision prohibiting dangerous intoxication could not reasonably be construed as necessary to the administrative site's management. Nor does he even attempt to explain how such a regulation violates the overall purpose of the authorizing statute, which is to create "an administrative site in the El Portal area adjacent to Yosemite National Park, in order that utilities, facilities, and services required in the operation and administration of Yosemite National Park may be located on such site outside the park." 16 U.S.C. § 47-1(a). It was an eminently reasonable choice to prohibit dangerous levels of intoxication among those individuals on the administrative site, and it was certainly reasonable for the Secretary to determine that such a regulation was "necessary and proper." *Id.* § 47-1(e). The fact that state laws may have also made criminal Nature's conduct does not call into question the validity of the federal regulation he was convicted of violating.

## CONCLUSION

For the reasons set forth above, the appeal is denied and the judgment and the decision of the magistrate judge are affirmed.

IT IS SO ORDERED.

Dated: **April 11, 2017**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE